# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MCKAYLA SMITH**, on behalf of herself, her minor child **JOHN DOE**, and all others similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> **PRUDENTIAL FINANCIAL, INC.** d/b/a **THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**, <br><br>                 Defendant. | No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

McKayla Smith ("Plaintiff"), through her attorneys, individually, on behalf of her minor child John Doe, and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Prudential Financial, Inc. d/b/a The Prudential Insurance Company of America ("Prudential" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.       This class action arises from Defendant's failure to protect highly sensitive data.

2.       Defendant is a financial services corporation based in New Jersey.

3.       As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about its current and former customers (and their beneficiaries). But Defendant lost control over that data

when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.      It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former customers' (and their beneficiaries') PII/PHI.

5.      On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendant's failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

6.      Plaintiff is a Data Breach victim, having received a breach notice. *See* **Exhibit A** She brings this class action on behalf of herself, and all others harmed by Defendant's misconduct.

7.      The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former customers' (and their beneficiaries') private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

8.      Plaintiff, McKayla Smith, is a natural person and citizen of Washington. She resides in Raymond, Washington where she intends to remain.

9.      Plaintiff, John Doe, is the minor child of Plaintiff McKayla Smith. He is a natural person and citizen of Washington. He resides in Raymond, Washington where he intends to remain.

10.     Defendant, Prudential Financial, Inc., d/b/a The Prudential Insurance Company of America, is a profit corporation incorporated in New Jersey with its principal place of business at 751 Broad Street, Newark, New Jersey 07102.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. And there are over 100 putative Class members.

12.     This Court has personal jurisdiction over Defendant because it is headquartered in New Jersey, regularly conducts business in New Jersey, and has sufficient minimum contacts in New Jersey.

13.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

*Defendant Collected and Stored the PII/PHI of Plaintiff and the Class*

14.     Defendant is a financial services corporation based in New Jersey.

15.     As part of its business, Defendant receives and maintains the PII/PHI of thousands of its current and former customers (and their beneficiaries).

16.     In collecting and maintaining the PII/PHI, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII/PHI.

17.     Under state and federal law, businesses like Defendant have duties to protect its current and former customers' (and their beneficiaries') PII/PHI and to notify them about breaches.

18.     Defendant recognizes these duties, declaring in its "US Consumer Privacy Notice" that:

a.      "Prudential values your business and your trust."[1]

b.      "We respect the privacy of your personal information and take our responsibility to protect it seriously."[2]

c.      "This privacy notice is provided on behalf of the Prudential companies listed at the end of this notice, except for Assurance IQ, and applies to our current and former customers."[3]

d.      "This notice describes how we treat the information we receive about you, including the ways in which we will share your personal information[.]"[4]

e.      "We maintain physical, electronic, and procedural safeguards to protect your personal information."[5]

f.      "The people who are authorized to have access to your personal information need it to do their jobs, and we require them to keep that information secure and confidential."[6]

---

[1] *US Consumer Privacy Notice*, PRUDENTIAL, https://www.prudential.com/links/privacy-policy (last visited July 7, 2024).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

g.  "Unless you agree otherwise, we do not share your personal information with non-Prudential companies[.]"[7]

19.  Likewise, via its "Online Privacy Statement," Defendant promises that:

a.  "Prudential collects Social Security numbers in the course of its business activities. Prudential has a privacy policy that is designed to protect personal information, including Social Security numbers. This policy requires that Prudential have measures in place to keep all personal information about its customers and employees, and employees of our vendors and business partners, secure and confidential."

b.  "Prudential retains personal information for as long as needed or permitted in light of the purpose(s) for which it was obtained and consistent with applicable law."

c.  "Prudential seeks to use reasonable administrative, technical and physical safeguards and other security measures to protect personal information within our organization."

20.  Finally, in terms of PHI, Defendant declares in its "HIPAA Notice of Privacy Practices" that:

a.  "This Notice describes the ways in which the Plans may use and disclose your health information (also called 'Protected Health Information')."[8]

b.  "We are required by law to: Ensure that Protected Health Information that identifies you is kept private, except as such information is required or

---

[7] *Id.*
[8] *HIPAA Notice of Privacy Practices*, PRUDENTIAL, https://www.prudential.com/links/hipaa (last visited July 7, 2024).

permitted to be disclosed by law. Describe the Plans' legal duties and privacy practices with respect to your Protected Health Information. Abide by the terms of this Notice that are currently in effect. Inform you in the event of a breach of your unsecured Protected Health Information."[9]

c.      "We must follow the terms of the Notice currently in effect. Our employees, agents and authorized vendors who have access to your Protected Health Information to provide services must also follow this Notice."[10]

d.      "We will not use or share your information other than as described in this Notice unless you tell us we can in writing. We will also comply with any state or federal law that is more restrictive as to our uses and disclosures of Protected Health Information."[11]

***Defendant's Data Breach***

21.      On February 4, 2024, Defendant was hacked in the Data Breach.[12]

22.      Worryingly, Defendant has already admitted the following:

a.      "[A]n unauthorized third party believed to be associated with a cybercrime group obtained access to a Prudential employee's computer account by acquiring log-in credentials through social engineering of Prudential's help desk vendor."[13]

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Data Breach Notice*, Iowa Atty Gen (May 22, 2024)
https://www.iowaattorneygeneral.gov/media/cms/5222024_Prudential_Insurance_Compan_F56
EC740138A7.pdf.
[13] *Id.*

b. "The unauthorized third-party subsequently acquired the log-in credentials of other Prudential employees."[14]

c. "Prudential identified evidence that the unauthorized third party removed certain customer information."[15]

23. Because of Defendant's Data Breach, at least the following types of PII/PHI were compromised:

a. first and last names;

b. dates of birth;

c. policy numbers;

d. contact information;

e. addresses;

f. email addresses;

g. phone numbers;

h. Social Security numbers;

i. credit card information;

j. debit card information;

k. financial account information;

l. driver's license information;

m. health treatment information;

n. health diagnosis information;

o. prescription information; and

---

[14] *Id.*
[15] *Id.*

p.  health condition information.[16]

24. In total, Defendant injured at least 2,556,210 persons—via the exposure of their PII/PHI—in the Data Breach.[17] Upon information and belief, these 2,556,210 persons include its current and former customers (and their beneficiaries).

25. And yet, Defendant waited over until July 2024 before it began notifying the class.

26. Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

27. Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendant caused widespread injury and monetary damages.

28. On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

29. Further, the Notice of Data Breach shows that Defendant cannot—or will not—determine the full scope of the Data Breach, as Defendant has been unable to determine precisely what information was stolen and when.

30. Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such

---

[16] *Data Breach Notice*, IOWA ATTY GEN (June 28, 2024) https://www.iowaattorneygeneral.gov/media/cms/6282024_PrudentialInsurance_Compan_ED90 6E8233AB8.pdf.

[17] *Data Breach Notifications*, MAINE ATTY GEN, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792- a1252b4f8318/cc7a25d8-bb55-485b-b3bc-060aa12004dd.html (last visited July 7, 2024).

services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

31.     Because of Defendant's Data Breach, the sensitive PII/PHI of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

32.     Stunningly, this Data Breach is only part and parcel of Defendant's *pattern* of negligent data security. After all, in 2023, Defendant experienced another data breach which exposed the PII of 320,840 individuals.[18]

33.     Worryingly, the cybercriminals that obtained Plaintiff's and Class members' PII/PHI appear to be the notorious cybercriminal group "ALPHV Blackcat."[19]

34.     ALPHV Blackcat is an especially notorious cybercriminal group. In fact, the Federal Bureau of Investigation (FBI) and the Cybersecurity and Infrastructure Security Agency (CISA) released a joint report warning the public about ALPHV Blackcat.[20] Specifically, the joint "Cybersecurity Advisory" (CSA) stated, *inter alia*, that:

> a.     "ALPHV Blackcat actors released a new version of the malware, and the FBI identified over 1000 victims worldwide targeted via ransomware and/or data extortion."[21]

---

[18] *Data Breach Notifications*, MAINE ATTY GEN,
https://apps.web.maine.gov/online/aeviewer/ME/40/e2a5ab4c-3947-4a2e-a9fe-b58eec80686c.shtml (last visited July 7, 2024).
[19] Pierluigi Paganini, *Prudential Financial Data Breach Impacted Over 2.5 Million Individuals*, SECURITY AFFAIRS (July 2, 2024) https://securityaffairs.com/165121/data-breach/prudential-financial-data-breach-2-5m-individuals.html.
[20] *ALPHV Blackcat*, FBI & CISA (Dec. 19, 2023) https://www.cisa.gov/sites/default/files/2023-12/aa23-353a-stopransomware-alphv-blackcat_0.pdf.
[21] *Id*.

b.    "This ALPHV Blackcat update has the capability to encrypt both Windows and Linux devices, and VMWare instances."[22]

c.    "ALPHV Blackcat affiliates have extensive networks and experience with ransomware and data extortion operations."[23]

d.    "According to the FBI, as of September 2023, ALPHV Blackcat affiliates have compromised over 1000 entities—nearly 75 percent of which are in the United States and approximately 250 outside the United States—, demanded over $500 million, and received nearly $300 million in ransom payments."[24]

e.    "ALPHV Blackcat affiliates use advanced social engineering techniques and open source research on a company to gain initial access."[25]

f.    "Some ALPHV Blackcat affiliates exfiltrate data after gaining access and extort victims without deploying ransomware. After exfiltrating and/or encrypting data, ALPHV Blackcat affiliates communicate with victims via TOR, Tox, email, or encrypted applications."[26]

35.    And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[27]

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

36.     Thus, on information and belief, Plaintiff's and the Class's stolen PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

*Plaintiff's Experiences and Injuries*

37.     Plaintiff McKayla Smith is a current customer of Defendant—having purchased life insurance.

38.     Thus, Defendant obtained and maintained Plaintiff's PII/PHI.

39.     And Defendant obtained the PII/PHI of Plaintiff's minor child John Doe—after all, John Doe is a named beneficiary on Plaintiff's insurance policy (which was purchased from Defendant).

40.     As a result, Plaintiff and John Doe were injured by Defendant's Data Breach.

41.     As a condition of receiving financial products and/or services from Defendant, Plaintiff provided Defendant with her PII/PHI. Defendant used that PII/PHI to facilitate its provision of financial products and/or services.

42.     Plaintiff provided her PII/PHI to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII/PHI and has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

43.     Plaintiff reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of PII/PHI.

44.     Plaintiff received a Notice of Data Breach.

45.     Thus, on information and belief, Plaintiff's PII/PHI has already been published— or will be published imminently—by cybercriminals on the Dark Web.

46.     Through its Data Breach, Defendant compromised the PII/PHI of Plaintiff and her minor child (John Doe).

47.     Plaintiff has *already* been impacted by identity theft and fraud:

    a.     she was notified by the IRS that an identity thief had fraudulently filed taxes using the Social Security number of her minor son (John Doe);

    b.     thereafter, Plaintiff was forced to spend time calling the IRS in an attempt to rectify such identity theft and fraud.

48.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft. After all, Defendant directed Plaintiff to take those steps in its breach notice.

49.     Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

50.     Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

51.     Plaintiff suffered actual injury from the exposure and theft of her PII/PHI—which violates her rights to privacy.

52.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendant was required to adequately protect.

53.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

54.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

55.     Today, Plaintiff has a continuing interest in ensuring that her PII/PHI—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

56.     Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.      loss of the opportunity to control how their PII/PHI is used;

b.      diminution in value of their PII/PHI;

c.      compromise and continuing publication of their PII/PHI;

d.      out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.      lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.      delay in receipt of tax refund monies;

g.      unauthorized use of their stolen PII/PHI; and

h. continued risk to their PII/PHI—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII/PHI.

57. Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

58. The value of Plaintiff and Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

59. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII/PHI far and wide.

60. One way that criminals profit from stolen PII/PHI is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

61. The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

62. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this

Court or a jury, to find that Plaintiff and other Class members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

63. Defendant disclosed the PII/PHI of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII/PHI of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII/PHI.

64. Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

65. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

66. In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[28]

67. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have

---

[28] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

lesser IT defenses and a high incentive to regain access to their data quickly."[29]

68.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**Defendant Failed to Follow FTC Guidelines**

69.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

70.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[30] The FTC declared that, *inter alia*, businesses must:

       a.     protect the personal customer information that they keep;

       b.     properly dispose of personal information that is no longer needed;

       c.     encrypt information stored on computer networks;

       d.     understand their network's vulnerabilities; and

       e.     implement policies to correct security problems.

71.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

72.     Furthermore, the FTC explains that companies must:

       a.     not maintain information longer than is needed to authorize a transaction;

---

[29] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[30] *Protecting Personal Information: A Guide for Business,* Fed Trade Commission (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

b.      limit access to sensitive data;

c.      require complex passwords to be used on networks;

d.      use industry-tested methods for security;

e.      monitor for suspicious activity on the network; and

f.      verify that third-party service providers use reasonable security measures.

73.      The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

74.      In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former customers' (and their beneficiaries') data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

75.      Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

76.      Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers;

monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

77.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

78.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

***Defendant Violated HIPAA***

79.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[31]

80.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI and PHI is properly maintained.[32]

---

[31] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.
[32] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

81.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.     failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.     failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.     failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.     failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.     failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.     failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.     failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security

incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.     failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.     failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

82.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following Nationwide Class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by Prudential in February 2024, including all those individuals who received notice of the breach.

84.     Plaintiff also proposes the following Washington Subclass, to be represented by Plaintiff Smith:

> All individuals residing in Washington whose PII/PHI was compromised in the Data Breach discovered by Prudential in February 2024, including all those individuals who received notice of the breach.

Together, the Nationwide Class and the Washington Subclass are referred to as the "Class."

85. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

86. Plaintiff reserves the right to amend the class definition.

87. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

88. <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

89. <u>Numerosity</u>. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 2,556,210 members.

90. <u>Typicality</u>. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

91. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

92. <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

    a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

    b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    if Defendant were negligent in maintaining, protecting, and securing PII/PHI;

    d.    if Defendant breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

    e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    f.    if Defendant's Breach Notice was reasonable;

    g.    if the Data Breach caused Plaintiff and the Class injuries;

    h.    what the proper damages measure is; and

    i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

93.    Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for

their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

### FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

94.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

95.     Plaintiff and the Class (or their third-party agents) entrusted their PII/PHI to Defendant on the premise and with the understanding that Defendant would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

96.     Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

97.     Defendant has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

98.     Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII/PHI.

99.     Defendant owed—to Plaintiff and Class members—at least the following duties to:

a.      exercise reasonable care in handling and using the PII/PHI in its care and custody;

b.      implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.      promptly detect attempts at unauthorized access;

d.      notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII/PHI.

100.    Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

101.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

102.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

103.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class (or their third-party agents) entrusted Defendant with their confidential PII/PHI, a necessary part of obtaining services from Defendant.

104. The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendant hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII/PHI —whether by malware or otherwise.

105. PII/PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

106. Defendant improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

107. Defendant breached these duties as evidenced by the Data Breach.

108. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII/PHI by:

    a. disclosing and providing access to this information to third parties and

    b. failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

109. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

110. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

111. Defendant has admitted that the PII/PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

112. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

113. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

114. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

115. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

116. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII/PHI.

117.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive PII/PHI.

118.     Defendant breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

119.     Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII/PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

120.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

121.     But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

122.     The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known

that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

123.    Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class members' PHI.

124.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

125.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

126.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

<u>**THIRD CAUSE OF ACTION**</u>
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

127.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

128.    Plaintiff and Class members either directly contracted with Defendant or Plaintiff and Class members were the third-party beneficiaries of contracts with Defendant.

129.    Plaintiff and Class members (or their third-party agents) were required to provide their PII/PHI to Defendant as a condition of receiving products and/or services provided by Defendant. Plaintiff and Class members (or their third-party agents) provided their PII/PHI to Defendant or its third-party agents in exchange for Defendant's products and/or services.

130. Plaintiff and Class members (or their third-party agents) reasonably understood that a portion of the funds they paid Defendant would be used to pay for adequate cybersecurity measures.

131. Plaintiff and Class members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

132. Plaintiff and the Class members (or their third-party agents) accepted Defendant's offers by disclosing their PII/PHI to Defendant or its third-party agents in exchange for products and/or services.

133. In turn, and through internal policies, Defendant agreed to protect and not disclose the PII/PHI to unauthorized persons.

134. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

135. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

136. After all, Plaintiff and Class members (or their third-party agents) would not have entrusted their PII/PHI to Defendant (or their third-party agents) in the absence of such an agreement with Defendant.

137. Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

138. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

139. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

140. Defendant materially breached the contracts it entered with Plaintiff and Class members (or their third-party agents) by:

    a. failing to safeguard their information;

    b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

    c. failing to comply with industry standards;

    d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

    e. failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendant created, received, maintained, and transmitted.

141. In these and other ways, Defendant violated its duty of good faith and fair dealing.

142. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

143.     And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

144.     Plaintiff and Class members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

## FOURTH CAUSE OF ACTION
### Invasion of Privacy
### (On Behalf of Plaintiff and the Class)

145.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

146.     Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

147.     Defendant owed a duty to its current and former customers (and their beneficiaries), including Plaintiff and the Class, to keep this information confidential.

148.     The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII/PHI is highly offensive to a reasonable person.

149.     The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

150.     The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

151.     Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

152.     Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

153.     Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

154.     As a proximate result of Defendant's acts and omissions, the private and sensitive PII/PHI of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

155.     And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

156.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII/PHI are still maintained by Defendant with their inadequate cybersecurity system and policies.

157.     Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII/PHI of Plaintiff and the Class.

158.     In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes

the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

159.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

160.    This claim is pleaded in the alternative to the breach of implied contract claim.

161.    Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendant benefitted from using their PII/PHI to provide products and/or services.

162.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members (or their third-party agents).

163.    Plaintiff and Class members (or their third-party agents) reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

164.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII/PHI.

165.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

166.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' products and/or services because Defendant failed to adequately protect their PII/PHI.

167.     Plaintiff and Class members have no adequate remedy at law.

168.     Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

### SIXTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

169.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

170.     Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII/PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII/PHI; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

171.     Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII/PHI.

172.     Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII/PHI had they known the reality of Defendant's inadequate data security practices.

173. Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII/PHI.

174. Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

175. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## SEVENTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiff and the Class)

176. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

177. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

178. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

179. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

  a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b.      Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c.      Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d.      Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

180.      The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

181.      If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

182.      And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

183.      If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

184.      An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

### EIGHTH CAUSE OF ACTION
**Violation of the Washington Consumer Protection Act**
**(On Behalf of Plaintiff Smith and the Washington Subclass)**

185.      Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

186.     Defendant is a "person" under the Washington Consumer Protection Act, RCW § 19.86.101(1), and they conduct "trade" and "commerce" under RCW § 19.86.010(2).

187.     Plaintiff and other members of the proposed Subclass are "persons" under RCW § 19.86.010(1).

188.     Defendant violated the Washington Consumer Protection Act by, *inter alia*:

    a.    failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass members' PII/PHI, which was a direct and proximate cause of the Data Breach;

    b.    failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.    failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*., which was a direct and proximate cause of the Data Breach;

    d.    omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass members' PII/PHI; and

    e.    omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass members' PII/PHI, including duties

imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*., and the Washington Data Breach Disclosure Law.

189.    Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII/PHI.

190.    Defendant intended to mislead Plaintiff and Subclass members and induce them to rely on its omissions.

191.    Had Defendant disclosed to Plaintiff and Subclass members (or their third-party agents) that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the PII/PHI that Plaintiff and Subclass members (or their third-party agents) entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Subclass members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

192.    Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Subclass members' rights.

193.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for

fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII/PHI.

194. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

195. Plaintiff and the proposed Subclass are entitled to an order enjoining the conduct complained of and ordering Defendant to take remedial measures to prevent similar data breaches; actual damages; treble damages under § 19.86.090; and the costs of bringing this suit, including reasonable attorney fees.

**NINTH CAUSE OF ACTION**
**Violation of the Washington Data Breach Disclosure Law**
**(On Behalf of Plaintiff Smith and the Washington Subclass)**

196. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

197. Under RCW § 19.255.010(2), "[a]ny person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

198. Here, the Data Breach led to "unauthorized acquisition of computerized data that compromise[d] the security, confidentiality, [and] integrity of personal information maintained by" Defendant, leading to a "breach of the security of [Defendant's] systems," as defined by RCW § 19.255.010.

199. Defendant failed to disclose that the PII—of Plaintiff and Subclass Members—that had been compromised "immediately" upon discovery, and thus unreasonably delayed informing Plaintiff and the proposed Subclass about the Data Breach.

200.    Plaintiff seeks all monetary and non-monetary relief allowed by law.

## PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further unfair and/or deceptive practices;

E.    Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.    Awarding attorneys' fees and costs, as allowed by law;

H.    Awarding prejudgment and post-judgment interest, as provided by law;

I.    Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.    Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.


Date: July 8, 2024

Respectfully submitted,

By:    */s/ Patrick Howard*
Patrick Howard (NJ Atty ID #02280-2001)
**SALTZ MONGELUZZI &**
**BENDESKY, P.C.**
8000 Sagemore Drive, Suite 8303
Marlton, NJ 08053
Tel: (215) 575-3895
phoward@smbb.com

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

*Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*